UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-100-GWU


JENNIFER CAROL HACKER,                                            PLAINTIFF,


VS.                                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Jennifer Carol Hacker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of profound hearing loss and a speech impediment.  (Tr. 43).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a data entry operator, and therefore was not entitled to benefits.  (Tr. 43-7).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether there were any jobs that the plaintiff, a 26-year-old woman with a high school education, could perform if she had no exertional impairments, but was limited to jobs involving no work in excessively noisy environments or where acute hearing was required for safety and job performance, to no work requiring more than occasional speaking, to no exposure to vibration or industrial hazards, and required work with repetitive procedures, no frequent changes in work routines, and no requirement for detailed or complex problem solving, independent planning, or the setting of goals.  (Tr. 24). The VE responded that such a person could perform the plaintiff's past relevant

work as a data entry operator, and in the alternative identified other jobs such a person could perform and provided another job that such a person could perform and provided the numbers in which it existed in the state and national economies. (Tr. 25-6).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a hearing impairment, and noted that she sometimes had trouble understanding people.  (Tr. 110).  Although she attended the Kentucky School for the Deaf for four years, she graduated from public high school with some help such as being put in the front of the classroom and a special tutor two or three times a week, according to her mother.  (Tr. 17-19).  She was able to perform a data entry job for three years, only stopping when the company went out of business.  (Tr. 6-7).  Her mother testified that her daughter was in the third semester of college with no special accommodation other than sitting in the front of a class, and was making mostly As and Bs.  (Tr. 12).

Christine Farler, a teacher for deaf and hard of hearing students in the Leslie County Schools, wrote a letter stating that the plaintiff had qualified for Special Education based on her hearing impairment, which had "impacted" her ability to use written and spoken English, but she had been a hard worker and was successful in the school setting.  (Tr. 156).  She noted that the plaintiff was concerned that her

8

condition would make it impossible for her to manage a job and a successful school career at the same time.  (Id.).  However, she did not indicate that there would be any reason that the plaintiff could not work.

Dr. Kevin T. Kavanagh, a board-certified otolaryngologist, examined the plaintiff on June 13, 2006.  The plaintiff reported that she had a hearing loss since birth, but was helped by hearing aids, and did "quite well in a quiet environment and can understand most of what is said on a one-to-one basis." (Tr. 162).  She could not understand speech in a noisy environment, however.  Dr. Kavanagh's examination showed that the plaintiff had "speech characteristic of the deaf" and some mild difficulty understanding speech in a quiet environment.  (Id.).  Speech discrimination was 76 percent in the right ear and only 4 percent in the left ear and pure tone audiometric testing showed a threshold of 35 decibels.  (Id.).  Dr. Kavanagh opined that the plaintiff had a significant hearing handicap but although it would "negatively impact her employment opportunities," he felt that there were "certainly jobs that she could do and accomplish without difficulty."  (Id.).

Dr. Frank D. Mongiardo examined the plaintiff in January, 2008 and noted a severe to profound sensorineural hearing loss, greater in the left than in the right and assessed a 25 percent impairment to the whole person for Worker's Compensation purposes.  (Tr. 183-4).  He recommended that the plaintiff protect

her hearing with ear plugs, continue to use hearing aids, and have an annual audiogram.  (Tr. 185).

Finally, Angela M. Morris, a doctor of audiology, performed an evaluation in December, 2006 for vocational rehabilitation purposes.  Her testing showed moderate to severe loss in the right and moderate to profound loss in the left ear, but speech discrimination was good with binaural stimulation.  (Tr. 191).  She recommended the use of bilateral hearing aids.  (Id.).

Two state agency physicians, Bertron Haywood and Amanda Lange, examined the record, and based on Dr. Kavanagh's report, concluded that the Commissioner's Listing of Impairment 2.08 for hearing impairments was not met. (Tr. 166-72, 174-80).  They found that the plaintiff would be limited to an unspecified extent in hearing and speaking, and should avoid even moderate exposure to noise or vibration.  (Id.).  The ALJ noted that there was no evidence of any disabling work limitations placed on the claimant by a physician, and gave substantial weight to the opinions of Dr. Kavanagh and the state agency physicians.  (Tr. 45).  His proposed hypothetical restrictions include all of the limitations suggested by these sources and there is no evidence of greater restriction.  Accordingly, they are supported by substantial evidence.

Although the plaintiff suggests that the ALJ substituted his opinion for the physicians', she does not cite any specific opinion or restriction which is greater than

found by the ALJ.  There is certainly no support for the plaintiff's allegation that her hearing loss and speech impediment would prevent her from performing sedentary level work.

The plaintiff's other argument is that the ALJ erroneously assessed her credibility, and made a single conclusory statement for finding her not credible. However, the ALJ discussed the plaintiff's testimony and the other evidence in detail, including the highly significant facts that the plaintiff was able to operate successfully at community college with no special accommodations other than sitting in the front of the classroom, and even made good grades.  Other information regarding her daily routine suggested that she was capable of fairly normal daily activities such as going out to eat and to see movies with friends, shop, and watch television.  (Tr. 45).  The ALJ, therefore, had ample reason for finding the plaintiff's allegations of disability less than fully credible.

The decision will be affirmed.

This the 18th day of January, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**